**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **NO. 4:26-CR-41-RPC-JMV**

**DANIEL BAKER, et al.** **DEFENDANTS**

# ORDER RECONSIDERING PRIOR DENIAL AND GRANTING MOTION TO PRODUCE REPRESENTATIVE SAMPLES OF DRUGS FOR TESTING

Now before the Court is the Motion for Reconsideration [88] filed by Defendant Daniel Baker, in which he requests reconsideration of the Court's September 16, 2026, Order Denying Motion to Produce Representative Samples of Drugs For Testing [87]. For the reasons stated herein, the motion is well-taken and the defense request is **GRANTED**.

## Background

The original Motion [79] requested that this Court order the Government to produce samples of the drugs alleged in Count II for the purpose "of performing a qualitative retesting of the drug specimen. This would include testing the purity level of the sample." [79]. On September 1, 2026, the Court held a hearing on the Motion [79]. At the hearing, for the first time, the defense stated that they wished to obtain the samples to perform a "quantitative," not "qualitative," analysis.

Per the Motion, the Defendant sought to have this Court order the Government to "produce representative samples of the drugs alleged in Count II of the Indictment for retesting by the Defense." The request was made pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E) [79]. In the motion, the defendant stated no reason justifying his request. The motion acknowledged

that it was opposed by the Government. The Government, however, did not respond to the motion. As a result, the Court entered an Order Setting Motion Hearing [81].

At the hearing on the motion, Baker did not produce any evidence or basis for questioning whether the DEA tests followed standard protocol and methodology for drug testing. *See* ***United States v. Escalante***, 946 F.3d 410, 411 (8th Cir. 2019). Rather, Baker focused his argument on the results of the test and the "margin of error."[1] The authority argued at the hearing, in addition to Federal Rule of Criminal Procedure 16, was limited to ***Apprendi***[2] and ***Doggett***[3] and their applicability to a mandatory minimum sentence.

The Court denied the Motion [79], finding, in part, that Baker had not shown any flaw in the DEA testing, there would be potential degradation to the sample and lack of prejudice to Baker.

**Motion for Reconsideration**

A district court "ha[s] continuing jurisdiction over the case and [is] free to reconsider its own earlier decision" before final judgment. ***United States v. Scott***, 524 F.2d 465, 467 (5th Cir. 1975). Motions to reconsider "are a recognized legitimate procedural device." ***United States v. Lewis***, 921 F.2d 563, 564 (5th Cir. 1991)(citing ***United States v. Cook***, 670 F.2d 46, 48 (5th Cir. 1982)). As the Government concedes, one of the possible grounds for reconsideration is "(3) the need to correct a clear error of law or prevent manifest injustice." [90 at 3]. Under this prong, the Court finds reconsideration to be appropriate.

**Analysis**

In ***United States v. Butler***, 988 F.2d 537 (5th Cir. 1993), the Court of Appeals for the Fifth Circuit held that "[i]n cases involving a controlled substance 'a concomitant part of the

---

[1] The Court is aware that "margin of error" is not the scientific term referenced in the testing documents. As relates to this motion, however, it serves the purpose.

[2] ***Apprendi v. New Jersey***, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[3] ***United States v. Doggett***, 230 F.3d 160 (5th Cir. 2000).

examination or inspection [is] the right of the accused to have an independent chemical analysis performed on the seized substance.'" ***Id.*** at 543 (citing ***United States v. Gaultney***, 606 F.2d 540, 545 (5th Cir. 1979), *rev'd on other grounds, sub nom*. ***Steagald v. United States***, 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981)); *see also* ***United States v. Ayala-Alas***, 2024 WL 3357858 at *2 (5th Cir. 2024).

There are, of course, limitations to this right. Even as stated in ***Butler***, the district court's refusal to grant the appellant's motion to compel the Government to produce drug samples for testing would be harmless if the record had shown that refusal would not affect the appellant's substantive rights. ***Butler*** at 543. A defendant's substantive rights are prejudiced if his inability to test the substance affects the verdict. ***United States v Montemayor***, 703 F.2d 109, 119 (5th Cir. 1983), *cert. denied,* 464 U.S. 822, 104 S. Ct. 89, 78 L. Ed. 2d 97 (1983).

The Court further reiterates the applicability of ***United States v. Escalante***, 946 F.3d 410 (8th Cir. 2019) as relates to futility in retesting. The defendant must be able to point to some reasonable outcome in his favor. Some mere wish for a great change in weight upon retesting is insufficient.

The Court certainly agrees with the Government's assertions that:

1. The original motion asked for a "qualitative" analysis, a request that, at the hearing, changed to "quantitative" testing;

2. The original motion gave no reason justifying the request other than citing the criminal rules;[4]

3. The defense produced no evidence or basis for questioning whether the DEA tests followed standard protocol and procedure;

4. The defendant did not produce any caselaw at the hearing to support his argument that he was entitled to retesting;

[4] In fairness to the defense, the Government filed no response at all.

5. The defense, for the first time, relies on ***Butler*** in its Motion for Reconsideration.

[90].

Nevertheless, it is the obligation of the Court to get it right and its obligation to know and apply the applicable law and that is not excused by a dearth of assistance from counsel.[5] The DEA test showed the amount of pure Methamphetamine Hydrochloride to be 51.6 grams with a margin of error of plus or minus 3.5 grams. The argument centers around whether additional testing would result in a finding that fell within the margin of error but below 50 grams. This finding does affect a substantial right of the defendant in that the ten-year mandatory minimum sentence will be dependent upon the jury finding that the substance in question was 50 grams of methamphetamine (actual).[6] Further, the retest would not require a "profound" difference in result as contemplated by ***Escalante***, 946 F.3d at 412, in that the DEA test showed the amount of pure Methamphetamine Hydrochloride to be 51.6 grams with an acknowledged margin of error of plus or minus 3.5 grams. The Court cannot say there is not a reasonable possibility that retesting would affect the verdict as relates to the actual substance weight and its effect on the mandatory minimum sentence.

[5] The defendant may feel the Court's prior ruling was "plainly incorrect." While this may be so, it worth noting that the original motion called for a "qualitative" analysis with no authority cited. In fact, it appears that defense counsel modeled—down to the drug lab—his motion on one filed in the Southern District of Mississippi in ***United States v. Holmes***, No. 1:24-cr-68-LG-RPM or other similar motions. It is noted that the motion in ***Holmes***, though unopposed by the Government, was **denied** by the district court in that case for reasons that are valid but simply based on different facts than this case. *See* ***United States v. Holmes***, No. 1:24-cr-68-LG-RPM, 2024 WL 4584589, at *1 (S.D. Miss. Oct. 26, 2024). This is the motion the Court prepared for. At the hearing, it transformed into a request for "quantitative" testing, once again, with no authority related to retesting cited. Specifically, ***Butler*** was not cited. Only in the 28-page Motion for Reconsideration did the Court receive this assistance.

[6] The Government makes a "what's the difference" argument by pointing out that Count I also carries a ten-year mandatory minimum sentence and that Baker still faces that possibility even if Count II is dismissed. But the logic applies both ways. As the Government argues against retesting on Count II, regardless of the outcome, the Government may proceed with prosecuting Count I which still carries a ten-year mandatory minimum sentence.

It is imperative to note that this ruling is limited to the facts of this case. Specifically, this ruling is warranted due to the proximity of the weight of the drugs to the 50 grams, the margin of error and the effect of the weight on the mandatory minimum sentence. It does not allow for a "fishing expedition" with no basis in law or fact.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Court does hereby reconsider its prior Order Denying Motion to Produce Representative Samples of Drugs for Testing [87]. Defendant's Motion to Produce Representative Samples of Drugs Alleged in Count II for Retesting by Defense [79] is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1. Within five business days of the Court's order, the Government shall confirm the present reserve weight of the drugs alleged in Count II, whether the three units remain separate, the current weight of each unit, and the amount previously withdrawn or consumed—to the extent those records exist—and document the seals and condition of the exhibit before transfer;
2. Before transfer, Baker must file ELI's executed declaration, proof of a current DEA registration or continued authority under a re-registration application satisfying 21 C.F.R. § 1301.36(i), and a protocol fixing the amount to be drawn from each unit, the minimum total sample, the maximum consumption, the expected remainder, the analytical method and quality controls, the chemical basis on which results will be reported, and the return procedure;
3. Within five business days after that filing, an authorized evidence custodian shall draw the approved sample, or deliver the exhibit to ELI for a draw that a Government agent may observe, and retain or immediately reclaim the remainder for trial;

4. ELI shall not exceed the approved consumption cap or conduct any further destructive testing without leave of Court. Additionally, ELI shall document the receipt, seals, pre-test and post-test weights, the amount consumed, and the amount returned. ELI shall promptly report any delay beyond its ordinary turnaround, and return all remaining material through the custodian;
5. The parties shall stipulate—or, absent stipulation, the Court shall instruct the jury—that the material consumed in court-authorized testing was removed after seizure, that the post-testing weight is not the exhibit's original weight, and that no inference for or against either party arises from that consumption, without establishing or conceding the original net weight, purity, or amount of actual methamphetamine; and
6. Upon the Government's request and satisfaction of Rule 16(b)'s reciprocal-discovery predicates, Baker shall provide any reports required by Rule 16(b)(1)(B) and any expert disclosures required by Rule 16(b)(1)(C) on the date the Court sets.

**IT IS FURTHER ORDERED** that, based upon representations made by the defendant as to timing of the retest, should the Government abide by their requirements under this Order, failure of the defense to obtain retesting results will not constitute grounds for continuance of the current trial setting.

**SO ORDERED**, this the 2nd day of October, 2026.

Robert P. Chamberlin

**UNITED STATES DISTRICT JUDGE**